No. 23034.

CLIFFORD A. BILLINGS *v.* THE PEOPLE OF THE STATE OF COLORADO.
(466 P.2d 474)

Decided March 16, 1970.

WILLIAMS, TAUSSIG & TRINE, JOHN A. PURVIS, WILLIAM D. NEIGHBORS, JOHN L. FRANCE, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE, Deputy, JAMES F. PAMP, Assistant, AUREL M. KELLY, Assistant, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE GROVES.

THE plaintiff in error, called the defendant, was convicted of second degree arson and of burning a building with intent to defraud an insurer. The structure involved, part of which was used by the owner as a liquor store with the remainder occupied as a dwelling, was located at Erie, Colorado. The fire occurred on a Sunday evening and was extinguished by the fire department. The property owner expressed his appreciation by giving the fire chief a bottle of whiskey. The discovery that the bottle contained gasoline rather than whiskey prompted an arson investigation.

A witness testified that earlier on the evening of the fire he had seen the defendant carrying a large shopping bag enter the liquor store. Nine days following the fire the defendant was questioned by two sheriff's officers, the fire chief, and an insurance investigator. The questioning took place in the officers' automobile and, after approximately two hours, the defendant made an oral confession. Later the defendant signed a printed form which acknowledged his receipt of "Miranda" warnings and contained his waiver of the constitutional rights involved. At the same time he signed a written confession.

The two officers testified in effect that prior to the initial questioning they gave "Miranda" warnings to the

defendant. The defendant and the fire chief testified that no such warnings were given prior to the oral confession. One sheriff's officer stated that he advised the defendant that he had the right to remain silent; that anything he said might be used against him; that he had the right to an attorney; that he had a right to have an attorney present during any questioning; and that if he could not afford an attorney the court would appoint one. The officer was then asked, "What did Mr. Billings say with response to that?"; and the officer answered, "I asked if he understood this, and he said that he did." The record continues, as follows:

"Q. And was that the gist of the advice you gave him?

"A. Yes, sir.

"Q. Anything further at all?

"A. No, sir."

The other officer testified that the defendant was advised that he need not say anything; that he might have an attorney present; that if he couldn't afford one that the court would appoint an attorney; and that anything he said could be used against him. The defendant replied "I understand." We have been unable to find any testimony in the record to the effect that prior to the oral confession the defendant made any statement expressly waiving his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694.

The information originally charged the defendant, the owner of the building and the mortgagee of the building with the crimes of which the defendant was convicted and, in addition, charged the three with conspiracy to commit arson and conspiracy to defraud an insurer. The prosecuting attorney planned to rely heavily on the testimony of the defendant's wife to establish the acts of conspiracy. When his wife was called to the stand, she successfully declined to testify on the ground that she might incriminate herself. Thereafter, the charges against the owner and mortgagee were dismissed on motion of the prosecuting attorney.

## I.

The principal issue in this matter is whether there was adequate compliance with *Miranda v. Arizona, supra. Sullins v. United States,* 389 F.2d 985, was decided by the Court of Appeals of the Tenth Circuit and was announced on February 26, 1968, subsequent to the trial of the instant action. In contrast to *Miranda, Sullins* has facts quite analogous to the present matter. The Attorney General has conceded that, if we are to follow *Sullins,* we must reverse.

In *Miranda* it was said:

"An individual need not make a pre-interrogation request for a lawyer. While such request affirmatively secures his right to have one, his failure to ask for a lawyer does not constitute a waiver. No effective waiver of the right to counsel during interrogation can be recognized unless specifically made after the warnings we here delineate have been given."

\* \* \*

"An express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver. But a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained."

We need not follow *Sullins* unless we find it persuasive; and we do not so find its majority opinion. We are far more impressed with Judge Lewis' concurring and dissenting opinion in which he made the following statement:

"We learn from the specifics of *Miranda* that neither the silence of the accused nor the actual giving of a statement is sufficient in this regard and the evidence in this case offers nothing further. But I do not agree, as I read the main opinion to hold, that an express declination of the right to counsel is an absolute from which, and only from which, a valid waiver can flow. *Miranda* states that such

a declination followed closely by a statement 'could' constitute a waiver. It does not negate other possibilities . . . ."

As we read a subsequent 10th Circuit case, *Bond v. United States,* 397 F.2d 162, it approves Judge Lewis' concurring and dissenting opinion in *Sullins.* See *People v. Johnson,* 75 Cal. Reptr. 401, 450 P.2d 865. As *Miranda* was decided by the United States Supreme Court, we are bound by it and must follow it. *Rohr Aircraft Corp. v. San Diego County,* 51 Cal. 2d. 759, 336 P.2d 521; *State v. Coleman,* 46 N.J. 16, 214 A.2d 393; *Breckline v. Metropolitan Life Ins. Co.,* 406 Pa. 573, 178 A.2d 748. Had the confession of the defendant immediately followed the giving of the *Miranda* warnings, we might reach a conclusion that defendant's statement, "I understand," constituted sufficient evidence to support a finding that the defendant had waived his rights against self-incrimination — but this is not the case under the present record and we have reached no conclusion in this respect.

 The defendant was pressed hard by each of the four people who had him in the sheriff's car, and particularly by the insurance investigator. As stated, nearly two hours were consumed between the time the *Miranda* warnings were given and the time that the defendant made his oral confession. This elapse of time, coupled with the defendant's weakness for alcohol and the fact that he had been drinking prior to the arrival of the officers, creates a situation — so far as the record before us discloses — which did not meet the *Miranda* standards. As is always the case, a court in passing on whether a confession is voluntary must consider the totality of the circumstances. For this confession to be admissable there must be further evidence of waiver on the part of the defendant.

██ In *Sullins* a new trial was ordered when the court found that there had been no compliance with *Miranda.* We do not feel that in all events a new trial is required. From the testimony of the officers above set forth an

implication might be drawn that the defendant did not expressly waive his rights against self-incrimination. Perhaps one making such an implication might find strength in the testimony of the fire chief and the defendant to the effect that no warnings were given. However, since neither of the sheriff's officers was questioned as to the matter of any affirmative waiver being made by the defendant, we do not indulge in the implication. Rather, we rule that the trial court should first hold a further hearing to determine whether or not, at the commencement of the initial questioning, there was an express waiver by the defendant of his constitutional privilege against self-incrimination. If, as a result of such hearing, the trial court determines that there was a failure to comply with *Miranda,* then it should order a new trial. If, on the other hand, it determines that there was such a compliance, we affirm the conviction as to both charges. See *Compton v. People,* 166 Colo. 419, 444 P.2d 263.

## II.

■■ The defendant urges that prejudicial error was committed by forcing the defendant's wife to claim the "Fifth Amendment" in front of the jury after the court and the prosecuting attorney had been advised that she would make such claim. Defendant relies on *DeGesualdo v. People,* 147 Colo. 426, 364 P.2d 374. The rule of *DeGesualdo* is that a prosecutor commits reversible error if, knowing that an accomplice will claim the privilege against self-incrimination, he calls the accomplice to the stand for the purpose of extracting the claim of privilege from him. Mr. Justice Doyle there wrote as follows:

"It is apparent that the district attorney could not have possibly entertained a good faith belief that Ciccarelli would testify if called and thus the inference is that this was a studied attempt to bring to the attention of the jury his refusal to testify and his claim of the 'Fifth Amendment.' "

We believe that the circumstances here are distinguish-

able from those in *DeGesualdo* and that it cannot be said that the prosecutor here did not proceed in good faith. The prosecuting attorney called the defendant's wife to the stand. At that point the attorney for the defendant asked to approach the bench and as a result the proceedings that followed were out of the presence of the jury. The defendant's counsel opened the argument with the following statement:

"Your Honor, I think we should take up this entire matter while are about it here. This is going to involve privilege; it is going to involve the husband-wife privilege; it is also going to involve the Fifth Amendment; and it is also going to involve constitutional rights, as to whether or not Mrs. Billings was advised of her rights. So we are objecting to her testimony on three separate grounds."

After argument, the court sustained defendant's counsel on the ground of husband-wife privilege. The prosecutor then moved to dismiss the conspiracy counts against the defendant. After granting this motion the court ruled that he would permit the defendant's wife to testify as to the conspiracy counts against the owner and mortgagee. The court based its ruling on the conclusion that the dismissal of the conspiracy counts against the defendant removed the question of husband-wife privilege. While defendant's attorney still insisted that the husband-wife privilege should apply, he did not mention again, in this *in camera* argument, the matter of privilege against self-incrimination.

The trial resumed in front of the jury and the defendant's wife took the stand. After introductory questions, defendant's attorney stated in open court that he had advised the witness not to answer and "to protect her constitutional rights in this matter." The court directed her to answer several preliminary questions after she attempted to decline to answer each question on the ground of self-incrimination. Defendant's counsel then asked and was permitted to approach the bench. As a result the jury was excused and the court conducted a

second *in camera* hearing. The defendant inquired of the prosecutor as to what he expected to elicit from the witness and the prosecuting attorney responded that he wished to prove the contents of a statement given by her and a letter written by her, which were identified as exhibits and which are part of the record here. The prosecutor argued that there was nothing in these two exhibits that would incriminate the witness. The court concluded that one of the exhibits might remotely tend to incriminate her and ruled that she would not be compelled to testify further. While we agree with the court that one of the exhibits might tend to incriminate the witness, the matter is at least arguable and for aught that appears in the record the prosecutor acted in entire good faith. A significant fact is that on each occasion when the defendant's attorney approached the bench, the court immediately excused the jury. If the defendant's attorney wished to argue the matter of self-incrimination prior to the questioning of the defendant's wife, he should have so indicated to the court. From the conduct of the court when such requests were made, we are inclined to believe that such a suggestion to be heard further would have been adopted immediately upon its submission. The mere statement concerning the fifth amendment at the inception of the first *in camera* hearing, without later bringing the matter to the court's attention, is not sufficient to show a lack of good faith on the part of the prosecutor nor to cause reversible error as a result of the preliminary questioning.

III.

■ The prosecuting attorney brought to the court's attention the fact that two of the jurors were taking notes. Over the defendant's objection, the court asked that all notes taken be surrendered and that no further notes be taken. Defendant urges that, since R.C.P. Colo. 47(m) permits the taking of notes by jurors, note taking should be permitted in a criminal case. There is no comparable rule in our Rules of Criminal Procedure. The

Attorney General has called our attention to *United States v. Davis,* 103 F.457 in which the practice of note taking is characterized as improper. That court expressed the view that a juror taking notes might exert an undue influence when discussing the case; that without a corrupt purpose the notes might be inaccurate or inefficient; and that with a corrupt purpose they could be used for the purpose of misleading or deceiving. In light of our rule in civil cases, we can hardly make the expression contained in *Davis.* However, in the absence of a rule on the subject in criminal cases, we hold that the matter of the making of notes by jurors in any particular case is within the sound discretion of the court. No error was committed here in this respect.

IV.

The defendant urges that, since the fire was started in the dwelling-house portion of the building and that the liquor-store portion had merely been damaged by smoke and water, the charge should have been first degree arson instead of second degree arson. Arson in the first degree applies to dwellings and designated structures (not including a business building), and arson in the second degree relates to structures other than those which are the subject of the first degree offense. C.R.S. 1963, 40-3-1 and 2. The penalty for first degree arson is imprisonment of not more than 20 years and for second degree arson for not more than 10 years. It was evident from the testimony concerning the condition of the premises that the person setting the fire intended to burn the liquor store portion as well as the dwelling. This being the case, it would seem that in preparing a charge the prosecutor is "damned if he does and damned if he doesn't." Had first degree arson been charged, the argument could be made that it should have been second degree arson. We cannot bring ourselves to the view that the assignment is the basis for reversible error.

V.

We find the other specifications of error without merit.

The judgment is reversed and the cause remanded with directions that the court proceed in accordance with the views above expressed.

Mr. Justice Pringle, Mr. Justice Hodges and Mr. Justice Lee concur.