The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Rogelio Manuel MARES, Defendant–
Appellant.

No. 06CA1450.

Colorado Court of Appeals,
Div. II.

March 31, 2011.

Rehearing Denied May 19, 2011.

John W. Suthers, Attorney General, Katherine A. Hansen, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Thomas K. Carberry, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CASEBOLT.

Defendant, Rogelio Manuel Mares, appeals the judgment of conviction entered on a jury verdict finding him guilty of second degree murder, first degree assault, and felony menacing. We affirm.

## I. Background

Late one night, defendant, who was armed with a sawed-off shotgun, parked his car across the street from a house where rival gang members were attending a party. Upon noticing defendant's vehicle, two people left the party and approached his car, carrying weapons. Defendant shot them both with the shotgun; one died at the scene and the other sustained serious injuries.

An investigator conducted an interview with a witness, O.M., who was at the party the night of the shooting. In previous interviews, she had admitted that she called defendant ten minutes before the shooting, but she had denied disclosing to defendant the location of the party or the fact that many attendees were members of the rival gang. During this interview, O.M. acknowledged telling defendant the location of the party and that there were members of the rival gang in attendance.

Before trial, defendant moved to suppress O.M.'s statements, asserting that they were a product of coercive governmental conduct. After reviewing a video recording of the interview, the trial court determined that the statements were voluntary and denied the motion.

While in custody, defendant placed various telephone calls using a jail telephone. Jail officials recorded these calls, which contained incriminating information. Before trial, defendant moved to suppress the statements contained in the recorded calls, asserting that they were obtained in violation of Colorado's wiretapping statutes, sections 16–15–102(10) and 18–9–303, C.R.S.2010, and that they were the fruit of warrantless searches under the Fourth Amendment. The trial court determined that defendant was on notice that all of his calls would be recorded and therefore he had no reasonable expectation of privacy in them. Accordingly, it denied the motion to suppress.

At trial, the prosecution's theory was that defendant went to the party location intending to exact revenge upon rival gang members for a previous gang-related murder. Defendant's theory was that he went with a friend, A.A., to the house across the street from the party, so that A.A. could purchase methamphetamine. He contended that he did not know when he arrived that a party attended by rival gang members was occurring across the street, and he asserted that he had acted in self-defense when approached by the two people from the party.

During trial, the prosecution called A.A. as a witness. Before he took the stand, defendant notified the court that he believed A.A. would assert his Fifth Amendment privilege

against self-incrimination. The prosecutor indicated that she was unaware of the witness's purported intention and asked the trial court to inquire of the witness outside the presence of the jury. The court asked A.A. if he would assert a right not to testify. A.A. answered affirmatively. The following exchange then occurred:

THE COURT: Before you can invoke your Fifth Amendment right, you have to have some criminal liability. Has [A.A.] been charged with anything in regards to this matter?

[PROSECUTION]: He has not, Your Honor.

THE COURT: And is it the prosecution's intention to pursue any charges against [A.A.] related to any alleged drug purchase or drug sales on the date in question?

[PROSECUTION]: It is not, Your Honor.

THE COURT: Okay. [A.A.], the prosecution says that they have no intention of charging you with any crimes related to this incident that allegedly occurred on October 30th and 31st of 2004. So since you don't have any criminal liability you don't have any Fifth Amendment right not to testify.

A.A. still refused to testify, and upon the prosecution's request, the court ordered him to do so. When A.A. again refused, the court held him in contempt and had him removed from the courtroom.

The prosecution asked the court to instruct the jury that A.A. had been called and had refused to testify, stating that the jury had heard information about his being at the scene of the shooting and might wonder why he had not been called to testify. Defendant objected to such an instruction, arguing that it was not relevant and that it would prejudice him. The court determined that an instruction was appropriate. It brought the jury into the courtroom and told the jury:

Ladies and gentlemen of the jury, the prosecution called as their next witness [A.A.]. He appeared in the courtroom. He invoked his Fifth Amendment right not to testify. I made an inquiry and made a determination that he did not have a Fifth Amendment right not to testify.

I ordered him to testify. He informed me that he was continuing to refuse to testify. So I held him in contempt of court and ordered that he be removed from the courtroom.

A.A.'s refusal to testify was not mentioned again by the parties until the prosecutor's closing argument, when she stated, "You didn't hear from [A.A.], because he would have rather be [sic] held in contempt of court than testify."

This appeal followed defendant's conviction.

## II. Instruction on the Refusal to Testify

Defendant first contends that the trial court violated his due process right to a fair trial and his right to confront A.A. Specifically, he asserts that the trial court erred in not appointing counsel for A.A.; that contrary to the court's conclusion, A.A. did have a Fifth Amendment privilege against self-incrimination; and that the court's instruction to the jury constitutes reversible error because it placed an improper inference of defendant's guilt before the jury that was not subject to cross-examination. Reviewing these contentions in reverse order, we reject them.

### A. Standard of Review

Defendant asserted a relevancy objection to the court's instruction at trial, but raises on appeal a due process and Confrontation Clause argument. Defendant did not raise any objection to the trial court's now asserted error in failing to appoint counsel for the witness or in its conclusion that the witness had no valid Fifth Amendment privilege. When, as here, a defendant fails to object or asserts on appeal a ground different from the ground asserted in the trial court, we review for plain error. *See People v. Vigil*, 127 P.3d 916, 929–30 (Colo.2006).

"Plain" in this context is synonymous with "clear" or "obvious." *Lehnert v. People*, 244 P.3d 1180, 1185 (Colo.2010). Plain error is error that is so clear-cut, so obvious, that a competent trial judge should be able to avoid it without benefit of objection. *People v. O'Connell*, 134 P.3d 460, 464 (Colo.App. 2005) (citing *United States v. Olano*, 507 U.S.

725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). Plain error requires reversal if, after a review of the entire record, a court can conclude with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *Lehnert*, 244 P.3d at 1185; *People v. Miller*, 113 P.3d 743, 748 (Colo.2005).

### B. Law

■ Reversible error can occur where a prosecutor calls a witness to the stand knowing that the witness will invoke his or her privilege not to testify. *People v. Newton*, 966 P.2d 563, 569–72 (Colo.1998). The supreme court has recognized that the error in such a situation may be based on one of two principles. *Id.* at 569.

First, reversible error exists where the prosecution engages in misconduct consisting of a "conscious and flagrant attempt to build its case out of inferences arising from use of the testimonial privilege." *Id.* (quoting *Namet v. United States*, 373 U.S. 179, 186–87, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963)). Second, reversible error exists when the inferences arising from the refusal to answer add "critical weight to the prosecution's case in a form not subject to cross-examination" and thus prejudice a defendant in violation of the Confrontation Clause of the Sixth Amendment. *Id.* (quoting *Namet*, 373 U.S. at 187, 83 S.Ct. 1151).

■ In determining whether an error has occurred in such situations and whether it is reversible, a reviewing court employs a five-factor totality of the circumstances test: (1) the prosecutor's intent in calling the witness; (2) the number of questions asked; (3) their importance to the state's case; (4) whether the prosecutor draws any inference in closing argument from the refusal to answer; and (5) whether the trial court gives a curative instruction. *Id.* at 570, 83 S.Ct. 1151 (citing *Rado v. Connecticut*, 607 F.2d 572, 581 (2d Cir.1979)).

### C. Application

#### 1. The Instruction

■ Defendant contends that the trial court's instruction constituted reversible er-

ror because it gave rise to an impermissible inference of his guilt. We disagree.

Here, the witness did not testify before the jury and the prosecutor therefore did not ask any questions. Rather, the only information the jury heard regarding the witness's refusal to testify was the court's instruction. Even so, we recognize that the reference to the Fifth Amendment in the court's instruction could give rise to an impermissible inference of defendant's guilt. Hence, we will analyze the instruction under the totality of the circumstances test to determine if it constituted reversible error. *See Newton*, 966 P.2d at 570.

The jury could draw one of two inferences from the witness's invocation of a privilege against self-incrimination. First, the jury might draw the impermissible inference of defendant's guilt if it believed that the witness refused to testify because he was a conspirator in the murder under the prosecution's revenge theory. Second, in the alternative, the jury could believe that the witness refused to testify because he was in the house across the street buying illegal drugs, which was defendant's theory of the case.

Because two inferences might be drawn from the refusal, one that benefits the prosecution and one that benefits defendant, we cannot conclude that the inferences arising from the instruction added "critical weight" to the prosecution's case. *Id.* at 569. And the prosecutor did not ask for an instruction referencing the witness's Fifth Amendment rights. Instead, the prosecutor merely asked that the jury be informed about his refusal to testify. Hence, the prosecutor did not engage in a "conscious and flagrant" attempt to place the impermissible inference before the jury. *Id.*

Concerning the five specific *Newton* factors, we recognize that the court did not give a "curative instruction" regarding the inferences that the jury could draw from the refusal and that, in closing argument, the prosecutor mentioned the refusal to testify. However, the prosecutor did not ask the jury to draw any inference from the refusal and did not specifically reference the witness's

privilege against self-incrimination. Moreover, no leading questions were asked during trial. *Cf. Douglas v. Alabama,* 380 U.S. 415, 416, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965) (prosecutor read from an alleged confession of the witness, pausing every few minutes to ask if the witness made the statement, in response to which the witness invoked the right not to testify); *Newton,* 966 P.2d at 571 (prosecutor compelled the witness to invoke her right not to testify "a total of fifteen times" and each question was "a detailed, leading question which put the prosecution's version of the facts before the jury").

Also, as discussed above, the inferences arising from the instruction were not of critical importance to the prosecution's case because although one inference supported its theory, another inference supported defendant's theory. In addition, there was other evidence in the form of O.M.'s testimony to reflect that defendant knew the location of the party and that members of the rival gang were there.

Finally, the prosecutor exhibited no bad faith intent by asking for the instruction because she did not ask the court to specifically refer to the Fifth Amendment. And when the prosecutor asked the trial court for the instruction, the court had already ruled that the witness did not have a right to refuse to testify. Moreover, the stated purpose of the request was to alleviate any concern that the prosecution had failed to call A.A. when he was so frequently mentioned during the trial. Accordingly, the request was made in good faith. *See People v. Scheidt,* 182 Colo. 374, 383–84, 513 P.2d 446, 451 (1973) (where witness was granted use immunity, prosecutor acted in good faith by calling the witness to the stand).

### 2. Automatic Reversal Rule

Defendant nevertheless contends that the totality of the circumstances test is inapplicable here because the trial court erred in determining that A.A. did not have a right to refuse to testify. In other words, defendant contends that automatic reversal is required where a witness validly invokes the privilege against self-incrimination. *See Billings v. People,* 171 Colo. 236, 242–44, 466 P.2d 474,

477–78 (1970) ("a prosecutor commits reversible error if, knowing that an accomplice will claim the privilege against self-incrimination, he calls the accomplice to the stand for the purpose of extracting the claim of privilege from him") (citing *De Gesualdo v. People,* 147 Colo. 426, 430–33, 364 P.2d 374, 377–78 (1961)). We conclude that the totality of the circumstances test established in *Newton* encompasses the previous formulations of the automatic reversal rule defendant cites and, therefore, we need not address the validity of the witness's claim of privilege.

In *De Gesualdo,* the court stated the rule defendant cites. Nevertheless, the court noted that where a prosecutor calls a witness to the stand in good faith, then "the conduct could be overlooked." 147 Colo. at 430, 364 P.2d at 377. In our view, *De Gesualdo* merely states the rule recognized in *Newton* that prohibits prosecutorial misconduct. The *De Gesualdo* formulation of that rule requires a determination of whether there is bad faith; it is not a rule of automatic reversal whenever a witness asserts a valid claim of privilege. *See Billings,* 171 Colo. at 242–44, 466 P.2d at 477–78 (applying the *De Gesualdo* rule where a witness invoked a valid privilege against self-incrimination but determining that, because the prosecution acted in good faith, reversal was not required); *Scheidt,* 182 Colo. at 383–84, 513 P.2d at 451 (where the prosecution granted use immunity to a witness, prosecutor acted in good faith by calling the witness to the stand; hence, reversal was not required).

The totality of the circumstances test adopted in *Newton* encompasses this good faith analysis by including as a factor the prosecutor's intent in calling the witness to the stand. A determination of whether a witness has a valid privilege claim, as well as whether the witness has been granted immunity, is relevant to the analysis only insofar as it reflects upon the prosecutor's intent in calling the witness.

Moreover, the validity of the witness's claim of privilege is not material to an analysis under the Confrontation Clause because the impermissible inferences arise from the refusal to testify without regard to whether such refusal was proper. *See State v. Mor-*

*ales,* 788 N.W.2d 737, 752–53 (Minn.2010). We therefore need not address whether the trial court correctly determined that the witness had no privilege against self-incrimination. *See Douglas,* 380 U.S. at 420, 85 S.Ct. 1074 (concluding that Court need not decide whether the witness properly invoked the privilege against self-incrimination when assessing a claim for reversal under the Confrontation Clause).

### 3. Appointment of Counsel

■ Defendant contends that the trial court erred by not appointing counsel to represent A.A. to help him decide whether to invoke his privilege against self-incrimination. The record, however, reveals that the court asked A.A. if he desired counsel, and A.A. indicated he did not.

But even if an error occurred, defendant lacks standing to challenge it. *See People v. Knapp,* 180 Colo. 280, 285–86, 505 P.2d 7, 10 (1973) (the right to counsel and the privilege against self-incrimination are personal to the witness and "[n]o reason exists for exclusion of evidence obtained from an uncounseled witness" where such evidence is offered against defendant, not the witness).

We therefore conclude that, under the totality of the circumstances, the trial court's instruction on the witness's refusal to testify did not constitute error, plain or otherwise.

### III. Suppression of the Telephone Calls

Defendant contends that the trial court erroneously denied his motion to suppress the recordings of the telephone calls he made from the jail because the recordings were obtained in violation of Colorado's wiretap statutes. We disagree.

### A. Standard of Review

■ When reviewing a trial court's suppression order, we defer to its findings of fact, but review its conclusions of law de novo. *People v. Lee,* 93 P.3d 544, 547 (Colo. App.2003) (citing *People v. Haley,* 41 P.3d 666 (Colo.2001)). We must determine whether it applied the correct legal standards and whether sufficient evidence in the record supports its legal conclusions. *Id.*

### B. Law

A party to an intercepted telephone call may move to suppress statements contained in the call if the call was unlawfully intercepted. § 16–15–102(10). Where a party consents to interception of a telephone call, the call is not "unlawfully" intercepted, and statements contained in the call should not be suppressed. *People v. Morton,* 189 Colo. 198, 201, 539 P.2d 1255, 1258 (1975); *see* § 18–9–303(1)(a), C.R.S.2010 (a person commits unlawful wiretapping if the person knowingly records a telephone communication without consent of at least one party to the call).

### C. Application

#### 1. Notice

■ Defendant contends that the phone calls were unlawfully intercepted because he lacked notice that the calls were recorded. We disagree.

At a hearing on defendant's motion, correctional officers testified that a recording, which was played on the telephone handset before every telephone call placed by a prisoner using that telephone, stated that the call would be recorded. Also, at a short jail orientation, prisoners agreed to read and abide by rules contained in a handbook, which stated that outgoing telephone calls would be recorded. Defendant had participated in an orientation. In addition, he acknowledged during one of the recorded calls that prison officials were recording his calls.

We therefore conclude that sufficient evidence in the record supports the trial court's finding that defendant had notice that his calls would be recorded.

#### 2. Consent

■ Defendant alternatively contends that even if he had notice that calls would be recorded, such notice does not equate to consent to the recording of his calls. We disagree.

It is true that, in many circumstances, notice does not necessarily equal consent. *See United States v. Daniels,* 902 F.2d 1238,

1245 (7th Cir.1990) (noting, as an example, that if illegal wiretapping were widespread, all users of telephones would have notice of wiretapping, but such notice would not equal consent). Where a prison inmate, however, is required to permit monitoring of telephone calls as a condition of using prison telephones, the prisoner impliedly consents if he has notice of monitoring and still places calls on the prison telephones. *United States v. Hammond,* 286 F.3d 189, 193 (4th Cir.2002) (collecting cases); *see also Lee,* 93 P.3d at 548 (citing *Hammond* favorably for this proposition, although not reaching the issue of consent under Colorado's wiretapping statutes).

### 3. Voluntariness of Consent

Defendant contends that he did not consent because he had no choice but to use the telephones at the prison to make the calls. But defendant could have chosen not to make telephone calls. Although that choice may not be an easy one, such circumstances do not render defendant's consent involuntary. *See United States v. Footman,* 215 F.3d 145, 155 (1st Cir.2000) (concluding that such consent is voluntary and therefore satisfies the consent exception to the federal wiretapping statute).

### 4. Prior Court Order

■ Defendant asserts that section 18–9–305(4), C.R.S.2010, explicitly prohibits law enforcement personnel from engaging in wiretaps without a court order, which prohibits the conduct of law enforcement officers in this case. We conclude that defendant misreads the statute.

Section 18–9–303 sets forth the prohibition against wiretapping. Section 18–9–305 contains "exceptions" to those prohibitions. Section 18–9–305(4) provides, in pertinent part:

A good faith reliance on a court order ... shall constitute a complete defense to any criminal action brought under provision of sections 18–9–302 to 18–9–304 or any civil action brought under any other law of the state of Colorado. This section shall not be construed in any manner which would allow an investigative or law enforcement

officer of the state of Colorado to engage in any wiretapping or eavesdropping without prior authorization by a court of competent jurisdiction....

Here, because defendant consented to the recording of his telephone calls, law enforcement personnel did not commit wiretapping under section 18–9–303(1)(a). Accordingly, this "exception" to the wiretapping statute is inoperative. Moreover, we do not read section 18–9–305(4) to require law enforcement officers to obtain a court order before recording a telephone call when, as here, consent for such recordation exists. In addition, the quoted exception simply provides a complete defense when a criminal or civil action is brought against a law enforcement officer who has relied upon a court order permitting a wiretap, and there is no such action involved here.

### 5. Reasonableness of Search

■ For the reasons already stated, defendant had no reasonable expectation of privacy in his telephone calls from the jail. Accordingly, we reject his claim that law enforcement officers violated his Fourth Amendment right against unreasonable searches. *See Lee,* 93 P.3d at 547–48 (no expectation of privacy in telephone calls from jail, especially when defendant was aware that his telephone calls were being monitored).

We therefore conclude that the trial court did not err in denying the motion to suppress.

### IV. Suppression of O.M.'s Statements

Defendant contends that the trial court violated his due process rights in admitting O.M.'s statements because, as a product of coercive governmental conduct, they were unreliable. We disagree.

### A. Standard of Review

■ In reviewing a ruling on a motion to suppress, we defer to the trial court's factual findings that are supported by the record, but review de novo the ultimate legal determination of whether a statement is voluntary.

*People v. Owens,* 97 P.3d 227, 234 (Colo.App. 2004).

## B. Standing

We first note that defendant challenges a witness's statement, not his own confession. If a witness's statements are involuntary, the witness's Fifth Amendment rights could be violated, but those rights are personal to the witness and therefore a defendant cannot challenge the admission of those statements in his trial. *See People v. Aguirre,* 839 P.2d 483, 487 (Colo.App.1992). Defendant, however, contends that the admission of a witness's involuntary statements violates his due process rights because the statements are unreliable evidence. *See Clanton v. Cooper,* 129 F.3d 1147, 1157–58 (10th Cir.1997) ("[B]ecause [an involuntary statement] is unreliable and its use offends the Constitution, a person may challenge the government's use against him or her of a coerced confession given by another person.").

Here, we will assume, without deciding, that defendant can challenge the admissibility of O.M.'s statements as a violation of his due process rights. Even so, we nevertheless conclude that the statements at issue here were voluntary.

## C. Voluntariness Law

A court will suppress a defendant's confession where it is the product of coercive governmental conduct because the admission of an involuntary statement violates the defendant's due process rights under the Fourteenth Amendment. *Colorado v. Connelly,* 479 U.S. 157, 163, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).

The voluntariness of a confession must be determined by a consideration of the totality of the circumstances under which the statement was made. *People v. Gennings,* 808 P.2d 839, 844 (Colo.1991). Several factors are considered when determining the voluntariness of a statement, including:

> [W]hether the defendant was in custody or was free to leave and was aware of his situation; whether *Miranda* warnings were given prior to any interrogation and

whether the defendant understood and waived his *Miranda* rights; whether the defendant had the opportunity to confer with counsel or anyone else prior to the interrogation; whether the challenged statement was made during the course of an interrogation or instead was volunteered; whether any overt or implied threat or promise was directed to the defendant; the method and style employed by the interrogator in questioning the defendant and the length and place of the interrogation; and the defendant's mental and physical condition immediately prior to and during the interrogation, as well as his educational background, employment status, and prior experience with law enforcement and the criminal justice system.

*Id.*

## D. Application

The trial court made a number of factual findings based on its review of the video, almost all of which duplicate verbatim words spoken in the video. Accordingly, all those findings have support in the record. The court also concluded, with record support, that the interview was tense and vigorous, that the investigator was stern, and that he threatened O.M. by saying that she could be a conspirator to murder. Nevertheless, it concluded that the statements were voluntary.

We agree with the trial court's conclusion. Reviewing that conclusion de novo, although we note that the interview was at the police station, we conclude that O.M. was free to leave at any time and was not under arrest. The investigator told her that he had closed the door only for their privacy. No *Miranda* warnings were administered. She appears to have been quite aware of her situation.

O.M. had voluntarily come to the police station, arriving with a male companion who was in the room during the entire interview. The companion never objected to the method or tone of questioning employed by the investigator. To the contrary, he encouraged O.M. to tell the truth, provided some information challenging O.M.'s recollection, and indicated his belief that the investigator was trying to help her.

The challenged statements were made during interrogation, which was vigorous and challenging. The investigator told O.M. numerous times that he did not believe she was telling him the entire truth, and pointed out some potential consequences of lying about the phone call, including being charged as a conspirator to the murder and eventually going to a prison populated by "a bunch of hardcore thugs, gang bangers, murderers, and rapists." But he did not make any direct physical threats. Also, the investigator never touched O.M., and the interview lasted less than an hour.

O.M.'s mental and physical condition appears to have been good, even though she broke down crying at one point during the interrogation. Although relatively young, she appears to have understood all the questions that were being asked. Contrary to defendant's contention, the officer did not threaten to take away O.M.'s children; he merely noted that she was "an eighteen-year-old girl with two little kids." The video does not indicate her employment status or her experience with the criminal justice system.

Based on our consideration of the totality of the circumstances under which the statements were made, we conclude that O.M.'s statements were voluntary.

The judgment is affirmed.

Judge LOEB and Judge FOX concur.