2014 COA 50

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Marvin Lee RICHARDSON, Defendant–Appellant.**

**Court of Appeals No. 10CA2488**

Colorado Court of Appeals, Div. I.

Announced April 24, 2014

---

\* Sitting by assignment of the Chief Justice under the provisions of Colo. Const. art. I, § 5(3)and

§ 24–51–1105, C.R.S.2012.

John W. Suthers, Attorney General, Katherine A. Hansen, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee

Douglas K. Wilson, Colorado State Public Defender, Anne Stockham, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant

\* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

Opinion by JUDGE STERNBERG \*

¶ 1 Defendant, Marvin Lee Richardson, appeals the judgment of conviction entered on jury verdicts finding him guilty of sexual assault on a child, sexual assault on a child by a person in a position of trust, and sexual assault on a child as part of a pattern of abuse. We affirm.

## I. Background

¶ 2 Until the victim, C.S., was almost twelve years old, he lived with his great-grandmother. Defendant, the great-grandmother's brother, often visited the home. When the victim was eleven years old, defendant began touching the victim's genitals. Later, defendant progressed to performing oral sex on the victim.

¶ 3 When the victim turned fourteen, he disclosed defendant's conduct to his father and mother, who contacted the police. A detective asked the victim to place a pretext phone call to defendant for the purpose of eliciting statements from defendant. The victim made the call, which was recorded, and confronted defendant about the sexual contact. Defendant implicitly acknowledged the contact. Defendant was subsequently arrested and interviewed by police. After signing a written waiver of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), defendant substantially confirmed the victim's allegations.

¶ 4 Before trial, defendant moved to suppress the statements he made to the victim during the recorded phone call and the statements he made during his police interview. He argued that the statements he made during the phone call were the product of an unlawful interception and the statements he made during the interrogation were improperly elicited because he had previously invoked his right to silence. The trial court denied defendant's motions to suppress. Defendant was convicted by a jury and sentenced to an indeterminate prison term of fifteen years to life.

§ 24–51–1105, C.R.S.2013.

## II. Suppression of the Phone Conversation

¶ 5 Defendant contends that the trial court erred in denying his motion to suppress the statements he made during his phone conversation with the victim. He acknowledges that law enforcement officials were permitted to record the conversation as long as they had the victim's consent. And he concedes that the victim agreed to participate in the recorded phone conversation. Nonetheless, he argues that because the victim was a minor, he could not "voluntarily or validly" consent to the recording of the conversation without the presence of, or a waiver signed by, a parent or guardian. We disagree.

### A. Standing

¶ 6 As an initial matter, the People contend that defendant lacks standing to challenge the victim's consent. Defendant argues that his standing is conferred by section 16–15–102(10), C.R.S.2013. We agree with defendant.

¶ 7 Section 16–15–102(10) allows "[a]ny aggrieved person in any trial, hearing, or proceeding in or before any court" to move for suppression of "the contents of any intercepted wire, oral, or electronic communication or the evidence derived therefrom" on the basis that the communication was unlawfully intercepted. An aggrieved person is "a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed." § 16–15–101(1), C.R.S.2013.

¶ 8 Here, because it is undisputed that defendant was an aggrieved person within the meaning of section 16–15–101(1), we conclude that he had standing to move for suppression on the basis that the communication was unlawfully intercepted due to a lack of valid third-party consent. *See People v. Rivera*, 792 P.2d 786, 789 (Colo.1990) (addressing an aggrieved person's claim that a third party's consent to an intercepted communication was involuntary).

### B. Preservation

¶ 9 We are likewise unpersuaded by the People's argument that defendant failed to preserve a claim that the victim's consent was not voluntary. During the hearing on defendant's suppression motion, defense counsel argued that the victim could not consent to the recording without either the presence of a parent or a written waiver from the parent. Although defense counsel did not specifically frame the argument as a challenge to the voluntariness of the victim's consent, we conclude that it was sufficient to alert the trial court to the issue. *Cf. People in Interest of S.J.*, 778 P.2d 1384, 1388 (Colo. 1989) (in consent-to-search case, the presence or absence of a parent, guardian, or custodian is one factor to be considered in making a determination of voluntariness).

### C. Governing Standards

¶ 10 We review a trial court's suppression ruling as a mixed question of law and fact. *People v. Mares*, 263 P.3d 699, 705 (Colo.App.2011). We defer to the trial court's factual determinations where there is sufficient evidence to support them. *Id.* But we review its legal conclusions de novo. *Id.*

¶ 11 Before suppressing evidence under section 16–15–102(10), a court must find not only that the moving party is an aggrieved person but also that the communication was unlawfully intercepted. *People v. Morton*, 189 Colo. 198, 201, 539 P.2d 1255, 1258 (1975). To determine the lawfulness of the interception, the court "must look to the prohibitory statutes on wiretapping and eavesdropping." *Id.* Those statutes, sections 18–9–303 and 18–9–304, C.R.S.2013, do not make unlawful a scenario in which one party to the conversation agrees to the recording. *Id.* Thus, as long as one party voluntarily consents to the recording of the conversation, there is no unlawful interception within the meaning of section 16–15–102(10). *Rivera*, 792 P.2d at 791; *Morton*, 189 Colo. at 201, 539 P.2d at 1258. To be voluntary, "the party's consent may not be the product of threats, coercion, undue influence or improper conduct by government officials." *Rivera*, 792 P.2d at 790. A challenge to the voluntariness of a party's consent is determined based on the totality of the circumstances. *Id.*

### D. Analysis

¶ 12 In his suppression motion, defendant argued, by analogy to laws governing a juvenile's waiver of his Fourth, Fifth, and Sixth Amendment rights, in favor of a per se rule that parental presence is required before a victim can consent to the recording of a conversation. He specifically pointed to section 19–2–511, C.R.S.2013, for the proposition that a parent or responsible adult must be present during a custodial interrogation of a juvenile.

¶ 13 At a hearing on the motion, defendant reiterated his position that the victim was "incapable of consenting to waiving his constitutional right to confidentiality in the phone call" by virtue of his juvenile status. Defendant admitted that he did not have any case law to support his position. And he did not otherwise challenge the voluntariness of the victim's consent. The court concluded that it did not have any basis upon which to grant defendant's motion because it "was not aware of a constitutional right that would have been violated under these circumstances," and, in the court's view, "[section] 19–2–511 simply doesn't apply in this case." Accordingly, the trial court denied the motion.

¶ 14 For two reasons, we conclude that the trial court's ruling was correct.

¶ 15 First, the standards for determining whether a party's consent is voluntary for purposes of our eavesdropping and wiretapping statutes are "less stringent than the standards applicable to questions of voluntariness arising in the context of alleged violations of constitutional rights." *Rivera,* 792 P.2d at 790. This is so because an "agreement to participate in electronic eavesdropping need not involve any negative consequences to the consenting party, especially when that party participates in the communication with prior knowledge that it will be monitored." *Id.* at 791. Indeed, *Rivera* declined to adopt a per se rule that consent to participation in electronic eavesdropping must be deemed involuntary whenever police officials make a fraudulent statement to the consenting party. *Id.* Instead, it adopted a totality of the circumstances approach to determining voluntariness.

¶ 16 Second, the authorities relied upon by defendant apply only to statements made by a juvenile while in custody and responding to interrogation by law enforcement officials. Such custodial situations present a risk that a juvenile will make potentially inculpatory statements. In contrast, in a noncustodial situation, law enforcement officers have no duty to procure the presence of a parent before permitting a juvenile to volunteer statements. *People v. Rivas,* 13 P.3d 315, 320–21 (Colo.2000); *see also People in Interest of R.A.,* 937 P.2d 731, 738 (Colo.1997) (in noncustodial consent-to-search context, absence of a juvenile's parent is but one factor in voluntariness determination and should not be given greater weight than any other factor); *S.J.,* 778 P.2d at 1388 (a juvenile who is not in custody may consent to a search absent his parent's consent so long as the consent is voluntary; voluntariness of a juvenile's consent to search in a noncustodial setting is determined by the same standards applicable to an adult).

¶ 17 Here, defendant does not argue, nor does the record show, that the victim was in custody when he agreed to the recording of the conversation. Rather, the victim's consent was given in an effort to assist in the apprehension and prosecution of defendant. Thus, the concerns inherent in the precedent relied on by defendant are not present here. Accordingly, we conclude that the trial court did not err in denying defendant's motion to suppress.

### E. Remand

¶ 18 Defendant also asserts that the trial court erred in not hearing evidence regarding the voluntariness of the victim's consent. Accordingly, he argues, the prosecution did not meet its burden to prove the voluntariness by a preponderance of the evidence. *See Rivera,* 792 P.2d at 790. Thus, he requests that the case be remanded "for a hearing on the merits of [his] claims." We decline to remand.

¶ 19 Defendant did not challenge the voluntariness of the victim's consent beyond asserting a legal argument that parental presence was required in order for the vic-

tim's consent to be valid. The trial court considered and rejected this argument, as do we. Because defendant presents only an issue of law, we see no reason to remand. *Cf. People v. Russom,* 107 P.3d 986, 991 (Colo.App.2004) (declining to address suppression argument raised for the first time on appeal).

### III. Suppression of Defendant's Custodial Statements

¶ 20 Defendant contends that the trial court erred when it denied his motion to suppress the statements he made during a custodial interrogation. Defendant argues that these statements were inadmissible because, prior to signing a *Miranda* waiver form, he invoked his right to silence. We are not persuaded.

### A. Factual Background

¶ 21 After his arrest, defendant was taken to an interview room where a tape-recorded interrogation was conducted. A detective informed defendant of the charges against him and advised him of his *Miranda* rights. Defendant verified that he understood these rights.

¶ 22 During the recorded discussion, but before defendant signed the *Miranda* advisement waiver form, defendant made three statements which he claims invoked his right to silence. The first, indicated by italics, occurred in the following colloquy:

[Detective]: ... In order for, uh, me to, uh, be able to hear your end on this, um, it brings us to the next section. And it states that, 'I understand my rights as they've been explained to me and with these rights in mind I'm willing to answer questions at this time'....

[Defendant]: Well I don't, I don't know if I'm gonna, you know, I'm gonna hurt myself if I, *I'm not gonna spill my guts about anything.*

[Detective]: Oh, well, if you don't want to, that's what this is about. And that's fine. Uh, I'll....

[Defendant]: I mean, what happens if I do, what happens if I don't?

[Detective]: Well, as it stands right now you're already under arrest, that's not going to change....

[Defendant]: M-m-m h-m-m.

[Detective]: ... and if you don't want to give responses to that, that's within your rights not to. So that's totally your choice.

[Defendant]: I don't, I really don't know what the right thing to do is.

¶ 23 The second and third statements that defendant contends constituted an invocation of his right to silence were made in the following context:

[Defendant]: I mean, how long is it gonna take to, so I can get out of here? I have bills to pay.

[Detective]: Okay. Um, regardless of what happens with [you answering questions] that doesn't change the timeline on how you can get out of here ... that has no bearing on what you decide here.

[Defendant]: *Well, I don't, I don't think I want to admit to anything.* You know? I think, I'm sorry.

[Detective]: That's [all right].

[Defendant]: I'm lost there because I, I, *I feel like that would be the wrong thing to do.*

[Detective]: Okay. So are you telling me that you don't want to proceed?

[Defendant]: Well, I mean, you know, I'll answer questions.

¶ 24 Following this preliminary conversation, the detective presented defendant with a *Miranda* waiver form, which defendant signed. An interrogation followed, and defendant made several incriminating statements.

¶ 25 The trial court held a hearing on defendant's motion to suppress the statements made during the interview. Prior to the hearing, the court listened to the audio recording of the interview and reviewed the transcript. Based on its review and evidence presented at the hearing, the court ruled that defendant did not unequivocally invoke his right to silence. Accordingly, the court concluded that defendant's subsequent statements were admissible. A copy of the inter-

view transcript was offered as an exhibit at trial.

### B. Standard of Review

¶ 26 Whether a defendant invoked the right to silence is a mixed question of law and fact. *People v. Adkins,* 113 P.3d 788, 790 (Colo.2005). While we defer to the trial court's factual findings, we may conduct an independent review of a recorded interrogation. *People v. Martin,* 222 P.3d 331, 334 (Colo.2010). We review the trial court's legal conclusions de novo. *People v. Muniz,* 190 P.3d 774, 783 (Colo.App.2008). If a defendant's statements are erroneously admitted, reversal is required unless we are confident, beyond a reasonable doubt, that the error did not contribute to the guilty verdict. *People v. Welsh,* 58 P.3d 1065, 1072 (Colo.App.2002).

### C. Governing Law

¶ 27 Before conducting an interrogation, law enforcement officials must inform a suspect of the right to remain silent. *Miranda,* 384 U.S. at 444, 86 S.Ct. 1602. To effectively invoke the right to silence, a suspect must unambiguously and unequivocally assert his desire to cease questioning. *People v. Arroya,* 988 P.2d 1124, 1129–30 (Colo. 1999) (a suspect must "clearly articulate the desire to remain silent so that a reasonable police officer in the circumstances would understand the suspect's words and conduct to mean that the suspect is asserting her *Miranda* right to cut off questioning...."); *People v. Grenier,* 200 P.3d 1062, 1072 (Colo. App.2008).

¶ 28 In determining whether a suspect unequivocally invoked the right to silence, the trial court examines the totality of the circumstances. *Arroya,* 988 P.2d at 1132. An inquiry therefore includes not only the words spoken by the suspect, but also the context in which the words were spoken. *Id.* at 1133. Among other factors, a court may consider the officer's response to the suspect's statement, whether the officer attempted to clarify the suspect's intent, the officer's demeanor and tone, the suspect's behavior, who was present during the interrogation, and the suspect's sophistication or prior experience with the criminal justice system. *Id.; People v. Quezada,* 731 P.2d 730, 734 (Colo.1987).

¶ 29 If a suspect's statement regarding his rights is ambiguous, police need not cease questioning or attempt to clarify the accused's statements; rather, police are free to continue questioning. *Muniz,* 190 P.3d at 783–84; *People v. Gray,* 975 P.2d 1124, 1130 (Colo.App.1997).

### D. Analysis

¶ 30 After the motions hearing, the trial court found that defendant's statements did not amount to unequivocal invocations of his right to silence. The trial court concluded that defendant's first statement—"I'm not gonna spill my guts about anything"—was ambiguous. Rather than constituting a clear expression of defendant's desire to exercise his right to silence, the trial court found that this was "simply a statement that he's not going to confess to any crimes." In reaching this conclusion, the court applied the proper legal standard and considered appropriate factors. Particularly, the trial court considered that when the detective attempted to clarify defendant's statement, defendant made additional comments which "ma[de] it very clear that he d[id]n't know whether to invoke his right to remain silent or not."

¶ 31 We agree that defendant's first statement was equivocal and expressed a desire not to admit guilt rather than to stop speaking with law enforcement officials. *See People v. Sexton,* 296 P.3d 157, 163 (Colo. App.2012) (a suspect's statement indicating that he did not wish to respond to a particular inquiry could reasonably be interpreted as a desire not to answer a single question rather than to cease an interrogation altogether); *Grenier,* 200 P.3d at 1071 (defendant's statements, "I don't want to say the truth without a lawyer or something" and "I don't want to say the truth cause it's not a court of law and I don't have an attorney" did not constitute an unambiguous invocation of the right to remain silent or to obtain counsel, but rather "demonstrate[d] that defendant was merely hesitant about telling the truth during the questioning"). We are not persuaded otherwise by defendant's argu-

ment that, because this statement was made immediately after the detective informed him of his right to remain silent, the statement can only be construed as an unambiguous request to end questioning. The timing of a defendant's statement is but one factor a trial court considers in determining whether a defendant's statement constituted an unequivocal invocation of the right to remain silent. *See Quezada*, 731 P.2d at 734 (the enumerated factors a court should consider when examining whether a defendant invoked his rights are not exhaustive and a trial court need not make specific findings with respect to each factor).

¶ 32 The trial court next analyzed defendant's second and third statements—"I don't think I want to admit to anything" and "I feel like that would be the wrong thing to do"—and likewise concluded that these did not constitute a clear articulation of defendant's desire to remain silent. Again, we perceive no error in this finding. *Compare Muniz*, 190 P.3d at 783 (a defendant's statements that he did not want to argue with police officers, was "not going to tell [police]" and wanted to go home did not amount to an unambiguous desire to end the interrogation), *with United States v. Rambo*, 365 F.3d 906, 910–11 (10th Cir.2004) (a defendant's response, "No," when asked if he wanted to talk about the crime clearly invoked his right to silence).

¶ 33 A review of the totality of the circumstances surrounding all three of defendant's statements lends further support to the trial court's conclusion. For example, throughout the interrogation, both the detective and defendant were calm and conversational. *See, e.g., People v. Jimenez*, 217 P.3d 841, 860 (Colo.App.2008) (considering the calm demeanor that was maintained throughout the interview to support a finding that defendant did not unequivocally invoke his right to silence); *Muniz*, 190 P.3d at 784 (court should examine, among other considerations, the demeanor and tone of the parties throughout the interrogation). And each time defendant made an ambiguous statement reflecting a desire to remain silent, the detective sought to clarify the statement by asking defendant if he wanted to continue. *See Arroya*, 988

P.2d at 1137 (the detective's attempt to clarify defendant's statement as to whether she wanted to continue the interview supported a conclusion that defendant did not unequivocally invoke her right to silence). Defendant responded that he would "answer questions." *See Grenier*, 200 P.3d at 1072 (the trial court did not err in concluding defendant did not invoke his right to silence where defendant made an ambiguous statement expressing a desire not to answer questions but later stated that he would continue to talk to police). As the interview progressed, defendant became increasingly responsive, and did not again express a desire to cut off questioning during the remainder of the interrogation. *See Arroya*, 988 P.2d at 1138 (that defendant became calmer and more responsive throughout the interrogation and did not again indicate a desire to remain silent supported a conclusion that she did not invoke her right to silence).

¶ 34 The trial court's conclusion that none of defendant's three statements constituted an unequivocal invocation of his right to silence is supported by the court's evidentiary findings and our independent review of the record. *See id.* at 1137–38 (declining to reverse when the trial court's findings are supported by the record and where the court considered relevant factors including the detective's responses to defendant's statement, the tone and demeanor of the interrogation, and the fact that defendant signed a *Miranda* waiver). Accordingly, we conclude that the trial court did not err in denying defendant's motion to suppress.

### IV. Challenge for Cause

¶ 35 Defendant's final contention is that the trial court erred in denying his challenge for cause to Juror M. According to defendant, Juror M exhibited an inability to serve fairly and impartially. We disagree.

### A. Legal Standards

¶ 36 To protect a defendant's right to a fair and impartial jury, a juror who evinces an inherent bias or who is unwilling to accept the basic principles of criminal law must be dismissed for cause. *Morrison v. People*, 19 P.3d 668, 672 (Colo.2000); *People*

*v. Vecchiarelli–McLaughlin,* 984 P.2d 72, 75 (Colo.1999); *People v. Drake,* 748 P.2d 1237, 1243 (Colo.1988). However, a juror's expression of concern or of a preconceived belief does not automatically require dismissal for cause. *Drake,* 748 P.2d at 1243.

¶ 37 Rather, jurors need not be disqualified due to a previously formed opinion if the court is satisfied, after voir dire, that the juror is willing and able to render an impartial verdict according to the law and the evidence presented at trial. § 16–10–103(j), C.R.S.2013; *Vecchiarelli–McLaughlin,* 984 P.2d at 75; *see Drake,* 748 P.2d at 1243. Because the trial court is best able to observe the juror's demeanor and evaluate the juror's assurances that he or she can serve fairly and impartially, we defer to the trial court's findings. *Drake,* 748 P.2d at 1243–44; *see also Morrison,* 19 P.3d at 670–73 (when a potential juror's statements are inconsistent or unclear, we defer to the trial court's determination as to the juror's ability to be fair and impartial).

¶ 38 If we conclude that the trial court abused its discretion in denying a defendant's challenge for cause, reversal is not warranted unless the defendant demonstrates that he was prejudiced by the composition of the jury. *See People v. Novotny,* 2014 CO 18, ¶¶ 2, 27, 320 P.3d 1194 (abandoning the automatic reversal rule set forth in *People v. Macrander,* 828 P.2d 234, 243 (Colo.1992), in favor of an "appropriate case specific, outcome-determinative analysis").

### B. Analysis

¶ 39 On her juror questionnaire, Juror M indicated that a relative had been the victim of a sexual assault, and that this would affect her ability to be a fair and impartial juror. She also wrote that she believed she could not be a fair and impartial juror because the case involved "a crime against a child."

¶ 40 During voir dire, the court questioned Juror M about the general tenets of criminal law. Juror M agreed that the prosecution carried the burden of proof, and when asked if she would listen to all the evidence before reaching a conclusion, Juror M responded, "I can do my best, yes." Juror M expressed concern regarding her ability to avoid prejudgment because her mother had been similarly victimized. But Juror M affirmed that she would base her verdict on the evidence, hold the prosecution to its burden of proof, and would not convict simply because of the nature of the accusations.

¶ 41 Defense counsel next interviewed Juror M. Juror M initially agreed with defense counsel's suggestion that "not all people are appropriate [jurors] for all cases." She acknowledged that "[i]t would be difficult to sit on this case." But when defense counsel questioned whether Juror M's "ability to be fair and impartial would be compromised by [her] feelings about what happened to [her] mom," she responded that she was "just concerned about the emotional roller coaster."

¶ 42 Defendant challenged Juror M for cause. Defendant argued that Juror M could not be fair and impartial because of her mother's experience. The trial court denied the challenge, concluding that Juror M's concerns about the nature of the case were far from uncommon and, moreover, Juror M did not say that she could not be fair and impartial.

¶ 43 We perceive no error in the trial court's ruling. Juror M several times indicated that she could and would apply the appropriate legal principles and decide the case based on the evidence presented, despite her mother's experience. *See People v. Phillips,* 219 P.3d 798, 801–03 (Colo.App. 2009) (juror who agreed to follow the law despite preconceived belief need not be dismissed for cause); *People v. Richardson,* 58 P.3d 1039, 1043–44 (Colo.App.2002) (trial court properly denied challenge for cause where juror, despite having strong emotional reactions to the subject matter of the case, affirmed that she would do her best to set aside her experiences and fulfill her duties as a juror); *People v. Blankenship,* 30 P.3d 698, 708 (Colo.App.2000) (trial court may rely on prospective jurors' statements that they can follow the law). Juror M clarified that her concern was not regarding her ability to be fair and impartial, but rather that sitting on this jury might be emotionally challenging.

See *People v. Garrison*, 2012 COA 132, ¶ 53, 303 P.3d 117 (a juror need not be automatically dismissed merely for expressing concern about the case because often such statements are simply an effort by the juror to express his or her beliefs regarding relevant emotional issues); *see also People v. Fleischacker*, 2013 COA 2, ¶ 27, —— P.3d —— (despite initially expressing concerns, a potential juror who is later rehabilitated need not be dismissed for cause if the court is satisfied that the juror can serve fairly and impartially); *cf. People v. Chavez*, 313 P.3d 594, 598–99 (Colo.App.2011) (where prospective juror made unequivocal statements demonstrating actual bias and no rehabilitative questioning occurred, challenge for cause should have been granted).

¶ 44 We acknowledge that Juror M's responses during her voir dire examination were not completely consistent with the answers provided on her jury questionnaire. However, any such inconsistencies were for the trial court, not this court, to resolve. *See People v. Davis*, 794 P.2d 159, 206 (Colo. 1990) ("We are in no position, on appellate review of a cold record, to judge which of a juror's inconsistent or equivocal answers rings the most true ....."), *overruled on other grounds by People v. Miller*, 113 P.3d 743 (Colo.2005).

¶ 45 We therefore conclude that the trial court did not abuse its discretion in denying defendant's causal challenge to Juror M. Because the trial court did not abuse its discretion, we need not consider whether defendant was prejudiced by the composition of the jury.

### V. Conclusion

¶ 46 The judgment is affirmed.

JUDGE TAUBMAN and JUDGE VOGT** concur.

** Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

2014 COA 75M