2014 COA 100

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Eli CURTIS, Defendant–Appellant.**

**Court of Appeals No. 12CA1528**

Colorado Court of Appeals, Div. III.

Announced August 14, 2014

John W. Suthers, Attorney General, Joseph G. Michaels, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Law Office of Suzan Trinh Almony, Suzan Trinh Almony, Broomfield, Colorado, for Defendant–Appellant.

Opinion by JUDGE GABRIEL

¶ 1 Defendant, Eli Curtis, appeals the judgment of conviction entered on a jury verdict finding him guilty of two counts of sexual assault on a child-position of trust-pattern of abuse and two counts of aggravated incest, all arising from sexual acts with his two daughters, S.C. and C.C. We conclude that (1) the charges in this case were properly joined; (2) the trial court did not err in refusing to suppress statements that Curtis had made during an interview with a Colorado Bureau of Investigation (CBI) agent because Curtis's statements were voluntary and he did not unequivocally invoke his right to remain silent; and (3) the trial court did not abuse its discretion in admitting certain res gestae evidence. Accordingly, we affirm.

## I. Background

¶2 Curtis was charged in two separate cases with sexually assaulting his two young daughters. These assaults began when the victims were nine or ten years old and continued until they were removed from the home several years later.

¶3 The first case involved S.C., and the prosecution's evidence tended to establish sexual contact that did not involve force or violence. The evidence further showed that S.C. became pregnant twice as a result of Curtis's assaults. The first pregnancy resulted in the birth of a stillborn child, and evidence in the record showed that Curtis had concealed the body, first in a black box in the garage and later in a pickle or Mason jar in the basement, and that he had repeatedly joked about the baby in a jar. S.C.'s second pregnancy resulted in the live birth of a child, and biological testing confirmed that Curtis was the father of this child. Curtis's defense to the allegations regarding S.C. was that he did not knowingly have sexual contact with her. Rather, he claimed that S.C. had drugged him and then initiated the sexual contact.

¶4 The second case at issue involved C.C. The prosecution's evidence tended to show that Curtis forcibly assaulted C.C. multiple times, thus distinguishing the circumstances in C.C.'s case from those in S.C.'s case. Curtis's theory of defense regarding C.C. was a general denial.

¶5 Prior to trial, the prosecution moved for joinder of the two cases, and the trial court conducted a hearing on this motion. After hearing the parties' arguments, the court began its analysis by performing the four-part test for admitting CRE 404(b) evidence set forth in *People v. Spoto*, 795 P.2d 1314, 1318 (Colo.1990), recognizing the propriety of joinder when the evidence of each offense would be admissible in separate trials. The court first found that the evidence of each offense would be relevant in the other case to show Curtis's intent and common plan, scheme, or design. The court then found that the evidence was logically relevant and that the logical relevance of this evidence was independent of the prohibited intermediate inference that Curtis had acted in conformity with his bad character. In this regard, the court noted that the location of the offenses was the same, the "isolation of the children [was] remarkable," the victims' ages were "relatively close in time," the charges overlapped in terms of the date of offenses, and C.C. was a witness to "the alleged incident" with S.C. And the court found that the maximum probative value of the evidence at issue was high and, implicitly, that this probative value was not substantially outweighed by the danger of unfair prejudice.

¶6 The court further observed that it had considered section 16–10–301, C.R.S.2013, in which "the legislature has highlighted the importance of similar transactions, particularly in the nature of sex offenses, and the presumptive admissibility of that evidence."

¶7 Based on the foregoing findings, and over Curtis's objection, the court granted the request for joinder, and at trial, it instructed the jury that (1) the evidence and the law applicable to each count should be considered separately, uninfluenced by the jury's decision as to any other count; (2) evidence related to each victim could be used for the stated limited purposes as evidence of Curtis's guilt as to the other alleged victim; and (3) the jury was prohibited from considering evidence that Curtis had sexually assaulted either victim as evidence that he had a bad character and therefore a propensity to commit the crimes.

¶8 Also prior to trial, Curtis moved to suppress the statements that he had made during his interview with the CBI agent. Curtis asserted that his statements were involuntary and that he had unequivocally invoked his right to counsel. As more fully discussed below, the court rejected both of these arguments and denied the motion to suppress.

¶9 The case proceeded to trial, and Curtis did not testify. The jury ultimately convicted him as set forth above, and he now appeals.

## II. Joinder

¶10 Curtis first contends that the trial court abused its discretion in allowing the prosecution to join for trial the charges in-

volving the respective victims. We are not persuaded.

### A. Preservation

¶ 11 As a preliminary matter, we address the preservation issue raised by the People and discussed in our colleague Judge Webb's special concurrence.

¶ 12 Unlike Judge Webb, we see no reason to address whether *People v. Gross*, 39 P.3d 1279, 1281–82 (Colo.App.2001), which concluded that a defendant need not renew a pretrial objection to the prosecution's motion for joinder and which has been on the books without apparent controversy for almost thirteen years, was wrongly decided. In this regard, we are persuaded by the wise counsel of now-Chief Justice John G. Roberts, Jr., who, as a circuit court judge, noted "the cardinal principle of judicial restraint—if it is not necessary to decide more, it is necessary not to decide more." *PDK Labs. Inc. v. U.S. Drug Enforcement Admin.*, 362 F.3d 786, 799 (D.C.Cir.2004) (Roberts, J., concurring in part and concurring in the judgment). This is particularly true in a case like this, where reaching the *Gross* issue unnecessarily could create a split among divisions of this court, as Judge Webb would do. *Cf. People v. Smoots*, 2013 COA 152, ¶ 20, —— P.3d —— (*cert. granted in part on other grounds* June 30, 2014) (noting that one division of the Colorado Court of Appeals is not obligated to follow the precedent established by another division but that the latter division gives the prior decision considerable deference).

¶ 13 We perceive our task as deciding cases on the merits when it is appropriate to do so. *See Goodman Assocs., LLC v. WP Mountain Props., LLC*, 222 P.3d 310, 320 (Colo.2010) (noting that the resolution of disputes on their merits is favored). Accordingly, we see no reason to depart from *Gross*, when it is not necessary to do so, in order to create a waiver or forfeiture that does not presently exist.

### B. Merits

■ ¶ 14 Turning to the merits, we review a decision concerning the joinder of separate charges for an abuse of discretion. *See People v. Pasillas–Sanchez*, 214 P.3d 520, 530 (Colo.App.2009) (concluding that the trial court did not abuse its discretion when it denied the defendant's motion to sever certain counts); *People v. Williams*, 899 P.2d 306, 313 (Colo.App.1995) ("The decision to consolidate informations is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion.").

¶ 15 "An abuse of discretion occurs when (1) the joinder caused actual prejudice to the defendant, not merely a difference in trial strategy arising from the joint trial of separate offenses, and (2) the trier of fact was not able to separate the facts and legal principles applicable to each offense." *Pasillas–Sanchez*, 214 P.3d at 530.

■ ¶ 16 Sexual assault offenses may be joined if the evidence of each offense would be admissible in separate trials. *See Williams*, 899 P.2d at 313.

¶ 17 Here, we agree with the trial court that the evidence of Curtis's assaults of the two victims would have been admissible in separate trials under both CRE 404(b) and section 16–10–301. *See Adrian v. People*, 770 P.2d 1243, 1245 n. 2 (Colo.1989) ("The enactment of section 16–10–301 reflects a policy judgment that in sexual assault cases a need arises to make similar transactions evidence more readily admissible."); *People v. Villa*, 240 P.3d 343, 349 (Colo.App.2009) (noting the legislature's determination that evidence of other sexual acts should be more readily available in sexual assault cases).

¶ 18 Specifically, as the trial court held, the evidence at issue related to material facts, including Curtis's intent and the fact that he was engaged in a common plan, scheme, or design, and this evidence was logically relevant because it made it more likely than not that Curtis had committed the crimes charged. This is particularly true here, given Curtis's defenses that he lacked the requisite intent as to S.C. and did not commit the alleged assaults against C.C.

¶ 19 For the same reasons, the logical relevance of the evidence at issue was independent of the prohibited intermediate inference that Curtis acted in conformity with his bad

character. And we cannot say that the obvious probative value of the evidence at issue was substantially outweighed by the danger of unfair prejudice.

¶ 20 We are not persuaded otherwise by Curtis's reliance on *People v. Jones*, 313 P.3d 626 (Colo.App.2011), *rev'd*, 2013 CO 59, 311 P.3d 274. As Curtis acknowledges in his reply brief, after he filed his opening brief, the supreme court reversed the division's decision in *Jones*, concluding, as pertinent here, that the other acts evidence at issue satisfied the four-part *Spoto* test. *See Jones*, 311 P.3d at 278–79. In our view, the supreme court's *Spoto* analysis in *Jones* supports the trial court's and our conclusions that the evidence of Curtis's assaults of the two victims would have been admissible in separate trials under both CRE 404(b) and section 16–10–301. *See id.*

¶ 21 Nor are we persuaded by Curtis's assertion that joinder was improper because he might have chosen to testify in a separate trial of the charges involving S.C. A defendant is not entitled to separate trials based solely on his or her desire to testify on fewer than all of the charged offenses. *Williams*, 899 P.2d at 313–14. To prevent joinder, a defendant must show that he or she has both important testimony to give concerning one count and a strong need to refrain from testifying on the other. *Id.* at 314.

¶ 22 Here, Curtis's responses during his interview with the CBI agent presented the intoxication defense that he claims he would have testified to had the charges involving S.C. been tried separately. Moreover, in closing argument, Curtis's counsel urged the jury to rely on the interview because Curtis had "said everything that he wanted to say to [the agent] when [he] talk[ed] to him...." On these facts, we conclude that Curtis has failed to show that he had important testimony to give regarding S.C. Nor do we perceive any prejudice arising from Curtis's decision not to testify. *See People v. Garcia*, 2012 COA 79, ¶ 31, 296 P.3d 285, 290 ("Even if we assume that Garcia had important testimony about his self-defense and consent defenses, he has not shown he was prejudiced because

his right to refrain from testifying on other counts was limited.").

¶ 23 Lastly, we are unpersuaded by Curtis's assertion that the joinder of the charges likely resulted in juror confusion. We perceive nothing in the record that evinces such confusion, and Curtis does not explain why the jurors would have had difficulty keeping the charges separate, particularly given the differences in the circumstances of the assaults and given that the facts here were not complex. *See People v. Early*, 692 P.2d 1116, 1119 (Colo.App.1984) ("[D]efendant has failed to outline to this Court any specific inability which the jury had in separating the facts and legal theories applicable to each offense in this relatively uncomplicated series of facts."). Moreover, as noted above, the trial court instructed the jury to consider each charge separately from all other charges and further instructed the jury that it could not consider the charges against the two victims as propensity evidence. We must presume that the jury followed these instructions unless contrary evidence is shown, and we have seen no such contrary evidence in the record. *See People v. Davis*, 218 P.3d 718, 729 (Colo.App.2008).

¶ 24 Accordingly, we conclude that the trial court did not abuse its discretion in allowing the prosecution to join the charges pertaining to both victims.

### III. Motion to Suppress

¶ 25 Curtis next contends that the trial court erred in refusing to suppress the statements that he made during his interview with the CBI agent. He asserts that these statements were involuntary and were made after he had invoked his right to silence. We are not persuaded.

#### A. Background

¶ 26 On September 18, 2010, shortly after the then-fifteen-year-old S.C. had told a friend that she was pregnant with her father's child, a police officer interviewed Curtis at the police station. Before beginning the interview, the officer advised Curtis of his *Miranda* rights, and Curtis waived those

rights and said that he wanted to speak with the officer, which he proceeded to do.

¶ 27 Several days later, the police called Curtis and asked if he would return to the police station for a polygraph examination. Curtis agreed and arrived at the station within minutes.

¶ 28 At the station, Curtis was met by the police officer who had interviewed him several days earlier and a CBI agent, who was a certified polygraph examiner. After the officer introduced Curtis to the agent, the agent led Curtis to an interview room, where the agent reviewed the polygraph protocol, including the requisite consent form, with Curtis. The agent also advised Curtis of his *Miranda* rights, which Curtis again waived. Notably, the agent afforded Curtis the opportunity to take a break and use the restroom, and the agent told Curtis that he was free to leave at any time and was not required to participate in the polygraph examination if he did not wish to do so.

¶ 29 The agent then conducted the polygraph examination, after which he continued to question Curtis regarding S.C.'s allegations. Approximately thirty minutes into this interview, Curtis told the agent, "I gotta get home. My wife's been waiting over there for me." The agent replied, "I thought you wanted to clear this up." Curtis responded, "I do, but I have nothing else, goddammit. I have fucking nothing else. That's my fucking problem, I've got nothing else. All I got is speculation."

¶ 30 Notwithstanding these statements, Curtis then continued speaking with the agent about his relationship with S.C. Approximately fifteen minutes later, however, he said, "I can't make my wife wait this long, dude. It's frickin' four o'clock." The agent replied, "Dude, you told me, bro, you wanted to sit here and get this cleared up." Curtis responded, "This is what I got, man. I don't know what else to tell you. This is all I have. Dude, I swear to God, this is all I've got." Again, however, Curtis then continued speaking with the agent about his relationship with S.C. When the interrogation ended, Curtis was arrested.

¶ 31 Curtis moved to suppress the statements that he made during the second interview, arguing that they were a result of coercive police conduct and that he had invoked his right to silence but the agent failed to honor that right.

¶ 32 Thereafter, the trial court conducted a suppression hearing and denied Curtis's motion, finding that his statements were voluntary and that he had not unambiguously invoked his right to silence. Specifically, the court found:

> As I indicated, the defendant was not in custody, he was always aware and had been afforded the opportunity ... to leave the police station. He was aware of that situation, notwithstanding the fact that he was not in custody, he nevertheless was advised of his *Miranda* rights and he indicated that he understood and the Court found that he had voluntary [sic] waived those rights.

> He understood the right to confer with counsel. He was given time to consider whether to participate in the polygraph examination.... There were no threats or promises that were made to Mr. Curtis. The method and style employed by ... both officers was [sic] conversational, ... and the method and style employed by the officers were not psychologically coercive....

> ....

> The length of the interview ... was four and a half hours long and at times when Mr. Curtis referenced his other obligations, simply being with his wife, and then he readily went back into the subject matter without any significant prompting.

> ....

> So the Court does find that the statements were voluntary....

### B. Standard of Review

¶ 33 When reviewing a trial court's suppression order, we consider the interrelationship between the evidentiary facts of record, the findings of the trial court, and the applicable legal standards governing the trial court's conclusions of law. *People v. Syrie,* 101 P.3d 219, 221–22 (Colo.2004). Similarly,

"[w]hether a defendant invoked the right to silence is a mixed question of law and fact." *People v. Richardson*, 2014 COA 50, ¶ 26, 350 P.3d 905.

¶ 34 A trial court entering a suppression order engages in both fact-finding and the application of legal standards. *Syrie*, 101 P.3d at 222. We defer to the trial court's factual findings and will not overturn them if they are supported by competent evidence in the record. *Id.* We, however, review de novo the court's legal conclusions. *Id.*

### C. Voluntariness

■■ ¶ 35 "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). When a defendant challenges the voluntariness of a statement, the prosecution must establish by a preponderance of the evidence that the defendant's statement was made voluntarily. *People v. Miranda–Olivas*, 41 P.3d 658, 660 (Colo.2001).

■ ¶ 36 The focus of this voluntariness inquiry is whether, under the totality of the circumstances, the interrogating officer's behavior was coercive so as to overbear the defendant's will in making the statements. *People v. Zadran*, 2013 CO 69, ¶ 10, 314 P.3d 830, 833. The voluntariness doctrine requires a two-step inquiry. *Id.* First, the police conduct must have been coercive. *Id.* Second, the coercive police conduct must have played a significant role in inducing the statement. *Id.*

■ ¶ 37 In determining whether police conduct was coercive, courts look to the totality of the circumstances surrounding the interrogation and consider the following nonexclusive list of factors:

(1) whether the defendant was in custody;

(2) whether the defendant was free to leave;

(3) whether the defendant was aware of the situation;

(4) whether the police read *Miranda* rights to the defendant;

(5) whether the defendant understood and waived *Miranda* rights;

(6) whether the defendant had an opportunity to confer with counsel or anyone else prior to or during the interrogation;

(7) whether the statement was made during the interrogation or volunteered later;

(8) whether the police threatened [the] defendant or promised anything directly or impliedly;

(9) the method of the interrogation;

(10) the defendant's mental and physical condition just prior to the interrogation;

(11) the length of the interrogation;

(12) the location of the interrogation; and

(13) the physical conditions of the location where the interrogation occurred.

*Id.*, 314 P.3d at 833–34.

¶ 38 If a court finds that the police employed coercive conduct, then it must determine whether the coercive police conduct played a significant role in inducing the defendant to make subsequent inculpatory statements. *Id.*, 314 P.3d at 834.

■ ¶ 39 Here, the record, including the recording of the interrogation, shows that:

- Curtis was not in custody during the interview because he came to the police station voluntarily, was not placed in any restraints, and was told that he could leave or terminate the polygraph examination or subsequent questioning at any time;

- Curtis was read his *Miranda* rights before the polygraph examination and ensuing discussion with the agent, he acknowledged that he understood those rights, and he waived them;

- Curtis was offered the opportunity to confer with counsel before the polygraph examination, but he chose to waive his *Miranda* rights, participate in the examination, and speak further with the agent;

- the agent did not make any overt or implied threats or promises, and his interrogation method and style were conversational in nature;

- although Curtis was teary-eyed during parts of the interview, he appeared to remain in control, was articulate with his

responses, and said that he had not consumed any inhibiting drugs that day; and

- although Curtis was of limited education, had only sporadic employment at the time of the interrogation, and did not have prior experience with the criminal justice system, he had been at the police station just four days before to discuss the allegations, appeared articulate, and, as the trial court found, "certainly comprehended the magnitude of the issues as they presented themselves" during the course of the interview.

¶ 40 On these facts, we conclude that Curtis's will was not overborne and that, therefore, his statements during the interview were voluntary.

### D. Right to Silence

¶ 41 With respect to Curtis's assertion that he unequivocally invoked his right to remain silent, we first reject the People's assertion that Curtis did not preserve this argument for appeal. At the suppression hearing, the prosecutor argued that Curtis had not unequivocally invoked his right to remain silent, and Curtis responded that he had made clear that he did not want to talk to the officer anymore. The court then ruled on this issue, finding that Curtis "did not make an unequivocal invocation of his right to remain silent."

¶ 42 Accordingly, we conclude that the issue was properly preserved. *See People v. Milligan,* 77 P.3d 771, 775 (Colo.App.2003) ("[B]ecause the trial court addressed defendant's statements and the *Miranda* issue at the suppression hearing, we conclude the issue was properly preserved for appeal.").

¶ 43 To invoke the right to remain silent,

- a suspect must clearly articulate the desire to remain silent so that a reasonable police officer in the circumstances would understand the suspect's words and conduct to mean that the suspect is asserting her *Miranda* right to cut off questioning, thereby requiring the police to respect fully the suspect's exercise of this right.

*People v. Arroya,* 988 P.2d 1124, 1129–30 (Colo.1999). Once the suspect invokes the right to remain silent, the police must scrupulously honor the assertion of that right. *Id.*

¶ 44 To determine whether a suspect has unambiguously and unequivocally asserted a desire to cease questioning, the trial court must examine the totality of the circumstances. *Richardson,* ¶ 28, 350 P.3d at 912. This inquiry includes not only the words spoken by the suspect but also the context in which the words were spoken. *Id.* A court may consider, among other factors:

the officer's response to the suspect's statement, whether the officer attempted to clarify the suspect's intent, the officer's demeanor and tone, the suspect's behavior, who was present during the interrogation, and the suspect's sophistication or prior experience with the criminal justice system.

*Id.*

¶ 45 If a suspect's statement regarding his or her rights is ambiguous, however, then an interrogating officer need not cease questioning or attempt to clarify the accused's statements, but is free to continue questioning. *Id.* at ¶ 29, 350 P.3d at 912.

¶ 46 Here, we conclude that the totality of the circumstances surrounding Curtis's statements during his interview does not support a conclusion that Curtis had unambiguously and unequivocally invoked his right to remain silent. Although Curtis twice indicated that he needed to get home to his wife, he did not expressly indicate that he did not wish to speak to the agent any further. To the contrary, he stated that he had given the agent all of the information that he could provide but then continued discussing his relationship with S.C. In these circumstances, we cannot say that Curtis unequivocally and unambiguously invoked his right to remain silent. Nor, given the ambiguous nature of Curtis's statements and actions, can we say that the agent acted improperly in continuing to question Curtis or in not seeking clarification of Curtis's intentions. *See id.*

¶ 47 Accordingly, we conclude that Curtis did not unambiguously invoke his right to remain silence, and, for that reason as well, the trial court did not err in denying Curtis's motion to suppress.

## IV. Res Gestae Evidence

¶ 48 Finally, Curtis contends that the trial court abused its discretion in admitting evidence of his conduct concerning S.C.'s stillborn baby after its birth. Notably, Curtis does not assert that the evidence at issue was not res gestae evidence, as the trial court ruled. Nor does he challenge the admissibility of evidence of the pregnancy leading to the stillborn birth or the fact of the stillborn birth. Rather, he contends that the court erred in admitting the evidence of his conduct after the stillborn baby's birth, because the minimal probative value of this evidence was substantially outweighed by the danger of unfair prejudice. We perceive no abuse of discretion in the trial court's ruling.

¶ 49 The Colorado Rules of Evidence strongly favor the admission of relevant evidence. *People v. Greenlee*, 200 P.3d 363, 367 (Colo.2009). Thus, a trial court confronted with an objection on CRE 403 grounds is given broad discretion in performing that rule's balancing test, and we will not disturb the court's balancing decision absent a showing of an abuse of that discretion. *See People v. Garrison*, 2012 COA 132, ¶ 16, 303 P.3d 117, 122. Moreover, in assessing the admissibility of evidence over a party's CRE 403 objection, we must assume the maximum probative value of the evidence and the minimum prejudice reasonably to be expected. *See People v. Gladney*, 250 P.3d 762, 768 (Colo.App.2010).

¶ 50 Here, to be sure, the victims' testimony that Curtis removed the stillborn baby from S.C.'s room and concealed it in a box and then in a jar (and the evidence that Curtis had joked about the baby in a jar) presented a danger of unfair prejudice. Although we might have reached a different conclusion as to the admissibility of certain of this evidence were we sitting as the trial judge, for several reasons, we cannot say that the trial court abused its discretion in concluding that the probative value of the evidence at issue was not substantially outweighed by the danger of unfair prejudice.

¶ 51 First, Curtis's conduct after the stillborn birth reflected efforts to conceal that birth. These efforts, in turn, tended to show that he knew that he had fathered the child, and they tended to undermine his suggestion that he was unaware that he had intercourse with S.C. because she had drugged and sexually assaulted him.

¶ 52 Second, Curtis's actions in concealing the birth and the stillborn baby's body tend to evince consciousness of guilt. *See, e.g., People v. Summitt*, 104 P.3d 232, 235 (Colo. App.2004) ("Post-offense behavior, such as a defendant's concealment, flight, attempted suicide, alteration of appearance, destruction of evidence, use of aliases, or threats against witnesses, may be admissible as evidence of consciousness of guilt."), *rev'd on other grounds*, 132 P.3d 320 (Colo.2006); *cf. State v. Austin*, 52 Ohio App.2d 59, 368 N.E.2d 59, 65 (1976) ("[T]he concealment or destruction of a body is a circumstance permitting not only an inference of guilt as to homicide, but may also be considered in finding premeditation.").

¶ 53 Third, the evidence at issue tended to explain how the sexual assaults continued even after S.C. had delivered the stillborn baby because Curtis's concealment of the birth ensured that the authorities would not become involved, thus leaving both S.C. and C.C. vulnerable to continued assaults. Absent such an explanation, the jurors might have questioned the credibility of S.C.'s and C.C.'s testimony regarding the delivery of a stillborn baby, which, because of S.C.'s very young age, ordinarily would have attracted the attention of the authorities, as S.C.'s second pregnancy did.

¶ 54 In these circumstances, and given the high standard that a defendant must overcome in challenging on appeal a trial court's CRE 403 determination, we cannot say that the trial court abused its discretion in admitting the evidence at issue here.

## V. Conclusion

¶ 55 For these reasons, the judgment is affirmed.

JUDGE MILLER concurs.

JUDGE WEBB specially concurs.

JUDGE WEBB concurring specially.

¶ 56 While in agreement with the majority's disposition, I write separately to revisit *People v. Gross,* 39 P.3d 1279 (Colo.App. 2001), which the Attorney General asserts was wrongly decided. Both parties extensively briefed the continued viability of *Gross.* Its holding—that a defendant need not renew at trial an objection to joinder to preserve the issue for appeal—is not subject to the constitutional avoidance doctrine. *See People v. Thomas,* 867 P.2d 880, 883 (Colo. 1994) ("When possible, statutes are to be construed in such a manner as to avoid questions of their constitutional validity.").

¶ 57 Preservation has been described as both "[a]n initial question," *Minto v. Lambert,* 870 P.2d 572, 574 (Colo.App.1993), and "a preliminary matter," *Maes v. Lakeview Assocs., Ltd.,* 892 P.2d 375, 376 (Colo.App. 1994). Our supreme court has explained that before addressing the merits on appeal, "we must consider as a threshold matter whether [the party's arguments below] were adequate to preserve the issue ... for appellate review." *Blueflame Gas, Inc. v. Van Hoose,* 679 P.2d 579, 586 (Colo.1984).

¶ 58 For these reasons, I address preservation, even if—as the majority ably shows— Curtis's misjoinder contention can be rejected without doing so. And contrary to *Gross,* I conclude that a defendant must renew a joinder objection to preserve the issue, which Curtis failed to do.

## I. Background

¶ 59 Curtis was first indicted on the charges involving S.C. Six months later, he was separately indicted on the charges involving C.C. Before trial, the prosecution moved to join the cases under Crim. P. 13. The court granted the motion at a pre-trial hearing, over Curtis's objection.

## II. Preservation

¶ 60 In *Gross,* 39 P.3d at 1281–82, the division held that a defendant need not renew an objection to the prosecution's motion to consolidate indictments in separate cases to preserve the issue for appellate review. The division explained: (1) the requirement that a defendant renew a motion to sever under Crim. P. 14 is not controlling because under Crim. P. 13, "the prosecution rather than the defendant [i]s the moving party with the burden of proof"; (2) because objecting to consolidation under Crim. P. 13 is analogous to a motion in limine, "the objector is entitled to assume that the trial court will adhere to its initial ruling and that the objection need not be repeated"; and (3) the current version of Crim. P. 33(a) "allows the appellate court to review the trial record for prejudice." *Id.* Since then, other divisions of this court have adopted this conclusion, but without further analysis. *See People v. Barrus,* 232 P.3d 264, 269 n. 1 (Colo.App.2009); *People v. Owens,* 97 P.3d 227, 231 (Colo.App. 2004); *People v. Dembry,* 91 P.3d 431, 435 (Colo.App.2003).

¶ 61 For the following three reasons, I would decline to follow *Gross. See, e.g., People v. Washington,* 2014 COA 41, ¶ 27 ("To the extent that several divisions of this court have departed from *Strickland*'s above-noted statements regarding the applicable burden of proof, we are not obligated to follow those divisions." (citations omitted)).

¶ 62 First, where a defendant seeks severance under Crim. P. 14, the defendant bears the burden of proof and the defendant must renew the motion to preserve the issue for appellate review. *See, e.g., People v. Aalbu,* 696 P.2d 796, 806 (Colo.1985). In contrast, the prosecution bears the burden of proof under Crim. P. 13. But I do not see why who has the burden would determine that the defendant need not renew the joinder objection to preserve it for appellate review. In either circumstance, the defendant faces trial on multiple charges.

¶ 63 Second, the motion in limine rationale would have equal application to a trial court's presumed adherence to its earlier ruling whether a defendant objects to consolidation or moves for severance. *Cf.* CRE 103(a)(2) ("Once the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to pre-

serve a claim of error for appeal."). Thus, why a defendant would be required to renew an objection in one circumstance but not in another is likewise unclear.

¶ 64 Third, while Crim. P. 33(a) makes post-trial motions optional, the reasons set forth in *Aalbu* for requiring renewal of a motion to sever do not rest on the scope of appellate review:

> The purpose of the renewal motion is to alert the court to the necessity of reconsidering its original decision in light of the evidence presented at trial and to permit the defendant to reevaluate the issue of prejudice and to elect to proceed with a consolidated trial despite the risk of prejudice.

696 P.2d at 806 (internal quotation marks omitted).

¶ 65 Thus, the advantages of requiring that a severance motion be renewed are two-fold.

¶ 66 First, giving the trial court an opportunity to correct potential error furthers judicial economy. *People v. Casias*, 2012 COA 117, ¶ 57, 312 P.3d 208 (noting "the significant societal costs" of multiple proceedings). And even if the trial court's only remedy would be ordering a mistrial and retrying the case, the costs and delay of an appeal would be avoided.

¶ 67 Second, "the defense may have strategically changed its position during the course of the proceeding based upon a perception that developments had redounded to its advantage." *State v. Walker*, 140 Ohio App.3d 445, 748 N.E.2d 79, 87 (2000). Thus, requiring a defendant to renew the objection to joinder at the close of evidence "prevent[s] a defendant from deliberately failing to make a meritorious motion and waiting to see what verdict the jury returns." *United States v. Terry*, 911 F.2d 272, 277 (9th Cir.1990).

¶ 68 Contrary to the division's approach in *Gross*, both rationales would have similar force if applied to an objection to a motion to join cases under Crim. P. 13. And such a motion raises the same concerns as a motion to sever under Crim. P. 14. *See Spicer v. State*, 12 S.W.3d 438, 444 (Tenn.2000) ("[A]s a practical matter, the appellant's objection to consolidation had the same procedural and substantive effect as a formal motion to sever.").

### III. Conclusion

¶ 69 I would hold that to preserve an objection to joinder for appeal, the defendant must renew the objection again, no later than at the close of the prosecution's evidence.[1] And I would further hold that because Curtis did not do so, he failed to preserve his improper joinder claim for appeal.

---

1. Although relatively few jurisdictions have addressed this question, requiring that the objection be renewed reflects the weight of authority. *See, e.g., State v. Bingaman*, 655 N.W.2d 51, 53 (N.D.2002) (holding "issue is not properly preserved for appeal" where defendant "objected to joinder before trial, but did not make a motion for severance at the close of evidence"); *State v. Walker*, 140 Ohio App.3d 445, 748 N.E.2d 79, 87 (2000) (Renewal of an objection to a motion to consolidate "is generally held necessary to preserve the issue for review on appeal."); *Spicer v. State*, 12 S.W.3d 438, 444 n. 7 (Tenn.2000) ("Because the appellant in this case did renew his objection to consolidation after the State's proof and again in his motion for new trial, he thereby properly preserved his objection for appeal.").